**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| MAXELL, LTD., | |
| *Plaintiff,* | |
| v. | |
| TCL Electronics Holdings Ltd. (f/k/a TCL Multimedia Technology Holdings, Ltd.); TCL Industries Holdings Co., Ltd.; T.C.L. Industries Holdings (H.K.) Limited; TTE Corporation; TCL Moka International Limited; TCL Moka Manufacturing S.A. de C.V.; TCL King Electrical Appliances (Huizhou) Co. Ltd.; Manufacturas Avanzadas S.A. de C.V.; TCL Smart Device (Vietnam) Co., Ltd.; Shenzhen TCL New Technology Co., Ltd.; TCL Optoelectronics Technology (Huizhou) Co., Ltd.; TCL Overseas Marketing Ltd.; and TCL Technology Group Corporation (f/k/a TCL Corp.), | Case No. 5:23-CV-00108-RWS-JBB  **JURY TRIAL DEMANDED** |
| *Defendants.* | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. iii

I.      INTRODUCTION ........................................................................................1

II.     ARGUMENT ................................................................................................2

      A.    The Complete Legal Framework for a Patent Eligibility Analysis at the
           12(b)(6) Motion to Dismiss Stage ......................................................2

      B.    Each of the '780, '020, '341, and '558 Patents Are Patent Eligible Under
           35 U.S.C. § 101 ....................................................................................4

           **1.**    **TCL's Representative Claim "Analysis" Is Deficient.** ............4

           **2.**    **The '780 Patent is Patent Eligible.** ............................................5

                  **a.**    **The Claims of the '780 Patent Are Not Directed To An
                      Abstract Idea (*Alice* Step One).** ....................................5

                        **(1)**    **The Claims of the '780 Patent Recite a Specific
                                Manner to Improve Image Device
                                Interoperability and Viewing of Images from
                                Portable External Devices.** ............................... 6

                        **(2)**    **TCL Fails to Prove *Alice* Step One.** ............................... 8

                  **b.**    **The Claims of the '780 Patent Involve an Inventive
                        Concept Using Unconventional Steps (*Alice* Step Two).** ..........12

           **3.**    **The '341 Patent is Patent Eligible.** ............................................13

                  **a.**    **TCL's Motion Is Premature Prior To Claim
                      Construction.** ..................................................................13

                  **b.**    **The Claims of the '341 Patent Are Not Directed To An
                      Abstract Idea (*Alice* Step One).** ....................................14

                  **c.**    **The Claims of the '341 Patent Involve an Inventive
                      Concept Using Unconventional Steps (*Alice* Step Two).** ..........17

           **4.**    **The '020 Patent is Patent Eligible.** ............................................19

                  **a.**    **The Claims of the '020 Patent Are Not Directed To An
                      Abstract Idea (*Alice* Step One).** ....................................19

                  **b.**    **The Claims of the '020 Patent Involve an Inventive
                      Concept Using Unconventional Steps (*Alice* Step Two).** ..........21

           **5.**    **The '558 Patent is Patent Eligible.** ............................................24

                  **a.**    **The Claim of the '558 Patent Are Not Directed To An
                      Abstract Idea (*Alice* Step One).** ....................................24

                  **b.**    **The Claims of the '558 Patent Involve an Inventive
                      Concept Using Unconventional Steps (*Alice* Step Two).** ..........26

i

C.     The Court Should Reject TCL's Prosecution History Estoppel Arguments Relating to the '558 Patent as Procedurally Improper And Wrong. ......................28

III.     CONCLUSION .................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018).................................................................. *passim*

*Adaptive Streaming Inc. v. Netflix, Inc.*,
  836 F. App'x 900 (Fed. Cir. 2020) .......................................................10, 11

*Affinity Labs of Tex. v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)..............................................................17, 21

*Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*,
  841 F.3d 1334 (Fed. Cir. 2016)..................................................................1, 29

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014).................................................................................. *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................28

*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)............................................12, 17, 23, 27

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................28

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)............................................................... *passim*

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019)............................................................... *passim*

*Customedia Techs., LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020)..................................................................26

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018)...............................................................15, 26

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014)................................................................9, 15

*Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*,
  899 F.3d 1291 (Fed. Cir. 2018).....................................................................14

*EcoServices, LLC v. Certified Aviation Serv., LLC,*
    830 F. App'x 634 (2020) ...................................................................................2, 20

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016)..................................................................2, 3, 9, 21

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.,*
    2016 WL 1643315 (E.D. Tex. 2016) ......................................................................28

*Fall Line Patents v. Zoe's Kitchen,*
    Case No. 6:18-cv-407-RWS, 2021 U.S. Dist. LEXIS 251484 (E.D. Tex. May
    25, 2021) ...................................................................................................... *passim*

*Finjan, Inc. v. Blue Coat Systems, Inc.,*
    879 F.3d 1299 (Fed. Cir. 2018)................................................................................2

*Free Stream Media Corp. v. Alphonso Inc.,*
    886 F.3d 1355 (Fed. Cir. 2021).......................................................................17, 21

*Freeny v. Fossil Grp., Inc.,*
    2019 WL 1089145 (E.D. Tex. Feb. 12, 2019), *report and recommendation
    adopted,* 2019 WL 1083779 (E.D. Tex. Mar. 7, 2019).........................................11

*GREE, Inc. v. Supercell Oy,*
    2020 U.S. Dist. LEXIS 14412 (E.D. Tex. Jan. 29, 2020), *adopted* 2020 U.S.
    Dist. LEXIS 32620 (E.D. Tex. Feb. 21, 2020) ...................................................4, 5

*Hawk Technology Sys., LLC v. Castle Retail.,*
    60 F.4th 1349 (Fed. Cir. 2023) ...............................................................10, 11, 26

*Health Disc. Corp. v. Intel Corp.,*
    577 F. Supp. 3d 570 (W.D. Tex. 2021)...................................................................3

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
    792 F.3d 1363 (Fed. Cir. 2015).............................................................................25

*Luminati Networks v. Teso Lt,*
    2020 U.S. Dist. LEXIS 219278 (E.D. Tex. July 15, 2020)......................................3

*Maxell Ltd. v. Huawei Device USA Inc.,*
    297 F. Supp. 3d 668 (E.D. Tex. 2018)..................................................................29

*Maxell, Ltd. v. Huawei Device USA, Inc.,*
    Case No. 5:16-cv-178-RWS, 2018 U.S. Dist. LEXIS 235718 (E.D. Tex. Mar.
    29, 2018) ...................................................................................................................8

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
    837 F.3d 1299 (Fed. Cir. 2016)....................................................................... *passim*

*Microsoft Corp. v. I4I Ltd. P'ship*,
  564 U.S. 91 (2011)...................................................................................3

*MyMail, Ltd. v. ooVoo, LLC*,
  934 F.3d 1373 (Fed. Cir. 2019)..........................................................3, 14

*Rockstar Consotium US LP, Inc. v. Samsung Elecs., Co.*,
  2014 WL 1998053, (E.D. Tex. May 15, 2014)........................................26

*Schwing GmbH v. Putzmeister Aktiengesellschaft*,
  305 F.3d 1318 (Fed. Cir. 2002)...............................................................30

*Sta. Grp. LLC. v. Motorola Sols., Inc.*,
  2023 U.S. Dist. LEXIS 141366 (E.D. Tex. July 7, 2023).....................10, 15

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020)........................................................2, 9, 21

*Thales Visonix, Inc. v. United States*,
  850 F.3d 1343 (Fed. Cir. 2017)..................................................................7

*Thorner v. Sony Comput. Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012)................................................................29

*TLI Comm'ns LLC v. AV Auto., L.L.C.*,
  823 F.3d 607 (Fed. Cir. 2016)..................................................10, 17, 21, 25

*Trading Techs. Int'l, Inc. v. IBG, LLC*,
  921 F.3d 1378 (Fed. Cir. 2019)................................................................23

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
  957 F.3d 1303 (Fed. Cir. 2020)................................................................27

*Universal Elecs. Inc. v. Roku, Inc*,
  2019 WL 1877616 (C.D. Cal. Mar. 5, 2019).........................................15

*Virginia Innovation Sci. Inc. v. Amazon.com, Inc.*,
  227 F. Supp. 3d 582 (E.D. Va. 2017) ...................................................23

## Statutes

35 U.S.C. § 101 ........................................................................... *passim*

## Other Authorities

Fed. R. Civ. P. 12(b)(6)................................................................. *passim*

Local Rule 3-1..............................................................................28

## I.    INTRODUCTION

Plaintiff Maxell, Ltd. ("Maxell") files this Opposition to Defendants' Opposed 12(b)(6) Motion for Partial Dismissal of Plaintiff's Amended Complaint (Dkt. 37, hereinafter "Mot.").[1]  In its Motion, TCL seeks dismissal of Counts 2-5 in the Amended Complaint (Dkt. 16), which relate to Maxell's infringement allegations against TCL involving U.S. Patent Nos. 10,015,558 (the "'558 Patent"), 10,219,020 (the "'020 Patent"), 10,375,341 (the "'341 Patent"), and 10,650,780 (the "'780 Patent").  In its Motion, TCL forwards two primary arguments, neither have merit.

First, TCL seeks dismissal of all claims of the '558, '020, '341, and '780 Patents under 35 U.S.C. § 101, alleging those patents are directed to patent ineligible subject matter.  TCL's § 101 arguments follow a typical defendant's playbook—inaccurately describe the challenged patents in a manner completely divorced from the actual claims, including forwarding grossly oversimplified summaries of the claims and inapt analogies.  By ignoring the detail of the patents—the actual claim limitations—TCL hopes that it can convince this Court that nothing has been invented.  But an examination of the claims shows TCL's arguments to be baseless.

Second, TCL alleges that Maxell's infringement theories for the '558 Patent are barred by prosecution history estoppel.  However, TCL's arguments rest on a fundamental misunderstanding of the law.  TCL points to a statement *by the patent examiner* as evidence of *Maxell's* "disavowal" or surrender of claim scope, not a statement by Maxell.  But the law is clear—"an examiner's unilateral statement does not give rise to a clear disavowal of claim scope by the applicant." *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 841 F.3d 1334, 1341 (Fed. Cir. 2016).

Accordingly, the Court should deny TCL's Partial Motion to Dismiss in its entirety.

---

[1] Defendants provide a list of entities in their Motion (*see* Mot. at 1 n.1) and Maxell will collectively refer to those Defendants as "TCL" for purposes of its Opposition herein.

1

## II.    ARGUMENT

### A.    The Complete Legal Framework for a Patent Eligibility Analysis at the 12(b)(6) Motion to Dismiss Stage.

Section 101 of the Patent Act defines the scope of patentable subject matter broadly. 35 U.S.C. § 101. The Federal Circuit has been explicit that inventions involving a computer or software fall squarely within this definition of eligibility. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). The Supreme Court has set forth the well-known *Alice* test to determine whether a patent merely claims an abstract idea and is thus patent ineligible. *Enfish*, 822 F.3d at 1334 (citing *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014)).

At step one, Courts consider the claims in their entirety to ascertain whether "their character as a whole is directed to excluded subject matter." *Enfish*, 822 F.3d at 1335. "[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc*., 837 F.3d 1299, 1313 (Fed. Cir. 2016); *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) ("And we have reiterated the Supreme Court's caution against 'overgeneralizing claims' in the § 101 analysis, explaining that characterizing the claims at 'a high level of abstraction' that is 'untether from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.'") (internal citations omitted).

A claim is not abstract when it is directed to a specific improvement to the way an existing technology operates, *Enfish*, 822 F.3d at 1336-7, or if it focuses on a specific means or method to achieve a desired result. *McRO*, 837 F.3d at 1313. For example, a claim is not abstract when it recites specific steps to accomplish a desired result, *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018), or if it focuses on a specific configuration or solution to accomplishing that goal. *EcoServices, LLC v. Certified Aviation Serv., LLC*, 830 Fed. Appx. 634,

638 (Fed. Cir. 2020).

If the claims are directed to excluded subject matter, step two determines whether the claims provide an "inventive concept." *Alice*, 573 U.S. at 217-18. This is a factual inquiry. *See Cellspin Soft, Inc. v. Fitbit, Inc*., 927 F.3d 1306, 1318 (Fed. Cir. 2019) ("[t]he district court thus further erred by ignoring the principle, implicit in *Berkheimer* and explicit in *Aatrix*, that factual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under § 101") (citing *Berkheimer v. HP Inc*., 881 F.3d 1360 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-27 (Fed. Cir. 2018)). A claim will be eligible at step two if it recites "concrete improvements in the recited computer technology." *Enfish*, 822 F.3d at 1339.

Moreover, "[d]etermining patent eligibility requires a full understanding of the basic character of the claimed subject matter." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019); *see also id.* at 1381 ("the district court erred by failing to address the parties' claim construction dispute before concluding [] that the [] patents are directed to patent-ineligible subject matter under § 101"); *Luminati Networks v. Teso Lt.*, 2020 U.S. Dist. LEXIS 219278, at *8 (E.D. Tex. July 15, 2020) (denying a motion to dismiss because "[t]he Court is persuaded that claim construction could be of benefit in addressing this issue as it is presented in this case.").

As patents are presumed valid, challengers must prove the patent ineligibility of each claim of a patent by clear and convincing evidence. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011); *see also Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570, 576 (W.D. Tex. 2021) ("It is also now well established that patents are presumed valid… [o]vercoming that presumption demands clear and convincing evidence, even in the eligibility context.") (citations omitted).

Finally, the standards for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) are well-known.  In the context of evaluating a motion to dismiss under § 101, the Federal Circuit has explained that "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to defeat a motion to dismiss. *Cellspin*, 927 F.3d at 1317 (citing *Aatrix*, 882 F.3d at 1128); *Aatrix*, 882 F.3d at 1126-27 ("[P]atentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6).")

**B.      Each of the '780, '020, '341, and '558 Patents Are Patent Eligible Under 35 U.S.C. § 101.**

Each of the '780, '020, '341, and '558 Patents comprise patent eligible subject matter under the two-part *Alice* test.  TCL failed to carry its burden to show that each and every claim of the patents are ineligible by clear and convincing evidence at the motion to dismiss stage where, at a minimum, a host of factual disputes exist.  Instead, TCL improperly handwaves—and in many cases, completely ignores—specific technological improvements to existing problems, claim construction issues, and conducts a deficient representative claim analysis.  Accordingly, the Court should deny TCL's motion to dismiss the challenged patents under § 101.

**1.      TCL's Representative Claim "Analysis" Is Deficient.**

As the Federal Circuit has instructed, "[a] claim is not representative simply because it is an independent claim." *Berkheimer*, 881 F.3d at 1365-66.  Failure to support a conclusory statement of representativeness is grounds to deny a motion directed to patent eligibility.  *See GREE, Inc. v. Supercell Oy*, 2020 U.S. Dist. LEXIS 14412, *4-9 (E.D. Tex. Jan. 29, 2020) (because defendant did not show that the claims addressed in motion were representative, its "Motion to Dismiss must be denied"), *adopted* 2020 U.S. Dist. LEXIS 32620, at *4-5 (E.D. Tex. Feb. 21, 2020).  That is exactly what TCL did for each of the '780, '020, '341, and '558 Patents.

For each of the patents, TCL analyzed only a single independent claim: '780, claim 1 (out of 20 total claims), '020, claim 1 (out of 30 total claims), '341, claim 1 (out of 4 total claims), and '558 Patent, claim 1 (out of 17 total claims).  For each of the patents, TCL then provided generic, conclusory, and boilerplate statements such as "there is no substantive difference between" one claim and another, other claims add "generic" or "result-oriented" steps or elements, claim differences are "semantic."  *See, e.g.*, Mot. at 11, 16, 19, 22-23.  TCL unambiguously did not conduct a patent eligibility analysis for each claim of each of the four challenged patents, nor provide any substantial rationale for treating the claims the same.  *See GREE*, 2020 U.S. Dist. LEXIS 14412, *3 ("The party asserting invalidity may overcome the presumption of independent validity by offering a substantial rationale for treating a claim as representative of other asserted claims.") (citation omitted).  And its choice to focus on a single claim was intentional—at least some of the ignored claims provide support for denying its Motion as set forth in Section II(B)(2)-(5), *e.g.*, providing support for the "inventive concept."  *See infra.*  The Court should dismiss TCL's Motion for this reason alone.

### 2. The '780 Patent is Patent Eligible.

#### a. The Claims of the '780 Patent Are Not Directed To An Abstract Idea (*Alice* Step One).

Regarding *Alice* step one, TCL alleges that the "'780 Patent claims are directed to the abstract idea of *receiving compressed images and displaying them as a slideshow*."  Mot. at 19 (emphasis in original).  TCL is wrong.

The '780 Patent recites specific technological solutions focused on accomplishing not just one but two improvements over problems in the prior art: 1) an improvement in the interoperability of slide show image displays and their connected portable external devices (*e.g.*, digital cameras); and 2) an improvement in viewing of images from portable external devices (*e.g.*, digital cameras).

In order to achieve the latter, it must improve upon the former and, to accomplish these improvements, the claims recite specific limitations.  Such solutions satisfy *Alice* step one.

> **(1)    The Claims of the '780 Patent Recite a Specific Manner to Improve Image Device Interoperability and Viewing of Images from Portable External Devices.**

*First*, prior to the priority date of the '780 Patent (at least 15 years ago), image display apparatuses were not capable of seamlessly handling the different requirements between image interface circuitry and networks in order to receive image information from different sources and in different manners in a uniform interface.  *See* Compl., ¶ 77.  Indeed, the IEEE 1394 standard, the HDMI standard, the Universal Serial Bus (USB) standard, and different network standards used by local area networks (LAN) and wireless networks, have different requirements and limitations, and therefore created various problems of interoperability and source switching for implementation in a single digital apparatus and uniform interface.  *See id.*; *see also* '780 Patent, 1:30-2:5.    Notably, TCL never mentions this paragraph from Maxell's Complaint, which specifically outlines the technological problem, in its Motion.

For example, in the HDMI system, a baseband signal of ***un***compressed high-definition picture signals and audio signals are transmitted, and an apparatus which receives the transmitted high-definition picture signal does not record the received signal.  Such interface is also capable of higher bandwidth and therefore may be subjected to different encryption processing such as High-Bandwidth Digital Content Protection (HDCP).  *See* Compl., ¶ 78; *see also* '780 Patent, 1:46-67.  On the other hand, the USB circuitry and LAN and wireless interfaces transmit still pictures as compressed picture information but do so in different ways with their own sets of requirements and limitations (such as bandwidth limitations).  These interfaces had only been disclosed in the prior art separately and Maxell took the inventive step to implement them together,

pursuant to the claims, in a single digital apparatus that could connect to an external device (*e.g.*, a digital camera). *See id*.

The claims of the '780 Patent reflect a solution to the above problem. The claims do so by providing specific technological improvements over the prior art by the unconventional use of a variety of elements—a first signal, a second signal, USB interface circuitry, wireless LAN interface circuitry, and predetermined time intervals—to conduct and display a slide show in a specific manner, supporting images received by dissimilar interface circuitry. *See* Compl., ¶ 79. Using these elements together in the detailed manner articulated in the claims enables the image signals to be processed to enable interoperability between the interface circuitry. *See Thales Visonix, Inc. v. United States*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017) (reversing a patent ineligibility finding and determining the claims were not direct to an abstract idea at *Alice* step one even though the system used conventional sensors and a mathematical equation because the claims specified a particular configuration of the sensors and a particular method of utilizing the raw data that eliminated many of the complications inherent in conventional methods).

**Second**, in addition to the improvements to interoperability issues, the claims of the '780 Patent set forth a specific way to improve the viewing of images contained in external portable image devices, such as digital cameras. As the specification explains, prior to the priority date of the '780 Patent, systems were premised on connection between stationary apparatuses installed in homes, not portable apparatuses such as digital cameras and mobile telephones. '780 Patent, 2:6-11. The '780 Patent solved this specific problem by viewing a slide show on an image display apparatus that connects to portable external devices, such as a digital camera, without the interoperability issues caused by the diverse circuitry of those portable devices. *See id.* In this manner, the device conveniently displays slide shows of both the claimed "compressed first image

7

information corresponding to first still pictures" ***and*** the "compressed second image information corresponding to second still pictures" received by the USB interface circuitry and wireless LAN interface circuitry, respectively. *See id.*, claim 1.

Thus, contrary to TCL's assertions, gathering the elements in a single device as set forth in the claims (*e.g.*, claim 1) did, in fact, provide particular technological solutions to technical problems related to source switching in image display devices and image viewing. And both Maxell's Complaint and the '780 Patent explain how the claims achieve this result in a specific, not all-encompassing way.

### (2)    TCL Fails to Prove *Alice* Step One.

In an effort to minimize Maxell's innovation and support its contention of an alleged abstract idea, TCL substantially rewrites claim 1, spanning ***371 words***, into a stripped-down, four-step process comprising a meager ***25 words*** to imply that Maxell is preempting all solutions. *See* Mot. at 20 ("Claim 1 recites the steps of (1) sending a message requesting compressed image information; (2) receiving compressed image information corresponding to still images; (3) decoding the compressed image information; and (4) displaying a slide show."). Not so—there are no preemption concerns. *See Maxell, Ltd. v. Huawei Device USA, Inc.*, Case No. 5:16-cv-178-RWS, 2018 U.S. Dist. LEXIS 235718 *19-20 (E.D. Tex. Mar. 29, 2018) ("Likewise, the claims do not implicate 'the primary concern driving § 101 jurisprudence,' preemption.").

TCL then builds on its "summary" of claim 1 of the '780 Patent to support its abstract idea analogy, attempting to liken claim 1's specific technological improvements to Don Draper clicking through his family pictures in his Kodak carousel pitch. *See* Mot. at 20 ("Similar to a human operator receiving photographic slides, loading them into a slide carousel according to information about which end is the top of the image, and playing the carousel to project the images according to a set duration, claim 1 claims a broad and familiar concept and simply performs it in the context

of modern technology."). But TCL's analogy is premised on a misunderstanding of the specific elements, requirements, and solutions provided by the claimed elements. TCL's comparison is wholly inapt and is exactly the type of claim overgeneralization practice that the Supreme Court and Federal Circuit have repeatedly warned against in the context of an *Alice* step one inquiry. *See, e.g.*, *TecSec*, 978 F.3d at 1292; *Enfish*, 822 F.3d at 1337; *McRO*, 837 F.3d at 1313.

In fact, TCL's summary and analogy of claim 1 omit critical details on **how** claim 1 improved the device interoperability problem. For example, claim 1 does not just include generic "compressed image information" that is received and displayed in the abstract, but rather compressed image information that is received over specific means, USB **and** wireless LAN circuitry, from a digital camera which is then decoded and displayed in a specific manner. *See generally* '780 Patent, claim 1; *see also* Compl., ¶ 80. The claim further explains how the images obtained from the USB and wireless LAN circuitry can be displayed (in a slide show) at predetermined time intervals (*e.g.*, resizing, rotation, and/or conversion). *See id.*; *see also* Compl., ¶ 81. Dependent claim 4 adds that the first and second image information are compressed in JPEG format. *See* '780 Patent, claim 4. While USBs, LANs, and the JPEG format are technologies still used today, the arrangement of those elements to solve the problem set forth and solved by Maxell was anything but "a broad and familiar concept" at the time of the priority date of the '780 Patent (at least 15 years ago). *See* Mot. at 20. The technological improvements set forth in claim 1 cannot be done mentally or be "performed by a human" as TCL claims. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks").

Moreover, the specification of the '780 Patent further supports the specificity of claim 1 in

providing a particular solution to a technological problem.  *See Sta. Grp. LLC. v. Motorola Sols., Inc.*, 2023 U.S. Dist. LEXIS 141366 *8-9 (E.D. Tex. July 7, 2023) (denying a motion to dismiss on 101 grounds, and citing to Federal Circuit authority in stating that "[w]hile the claim language governs, the specification may sometimes assist in determining whether the claims are direct to an abstract idea").  Here, the specification provides additional detail explaining how, consistent with the claim language, the compressed picture image can be obtained through not only a USB interface but a network such as a radio LAN, a wired LAN, or the Internet, further highlighting claim 1 specifically solving the interoperability problem.  *See, e.g.*, '780 Patent, 2:27-30, 11:53-57, 15:20-16:43.

TCL concedes that *Alice* step one can be satisfied by claims that "'improve the functioning of the computer itself,' *or* that provide specific technological solutions to technical problems." Mot. at 4 (quoting *Alice*) (emphasis added).  Maxell has demonstrated that the claims of the '780 Patent satisfy at least the second way to meet *Alice* step one.  But TCL's arguments focus only on the first part of the statement—improving of the functioning of the computer itself.  *See* Mot. at 20-21 (citing *TLI Communications*, *Hawk Technology*, and *Adaptive Streaming*). However, these cases are readily distinguishable as none involved a patentee demonstrating that the asserted patent claims provided a specific technological solution to a technical problem.

For example, in *TLI Comm'ns LLC v. AV Auto., L.L.C. (In re TLI Comm'ns LLC Patent Litig.)*, the Federal Circuit held claims directed to "classifying and storing digital images" were abstract ideas.  823 F.3d 607, 611-613 (Fed. Cir. 2016).  The court noted that the claims were not directed to an improvement in the functioning of a telephone unit, server or any technology— rather, the claims merely implemented the method of classifying and storing images (an abstract idea) on that conventional hardware without presenting "any claim that the invention reflects an

inventive solution to any problem." *See id.* at 612.  Similarly, *Adaptive Streaming* did not discuss any argument by the patentee that the claims provided a specific technological solution to a technical problem.  *See Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F.App'x 900 (Fed. Cir. 2020).  TCL's reliance on *Hawk Technology* fares no better as it involved claims directed to viewing, on a device of a video surveillance system, displayed and stored video images.  *See Hawk Tech. Sys., LLC v. Castle Retail LLC*, 60 F.4th 1349, 1353 (Fed. Cir. 2023).  In failing step one, the court held that the claims lacked the "'*how* the purported invention improve[s] the functionality' of video surveillance systems."  *Id.* at 1358.  In contrast to these cases, the '780 Patent has provided a specific technological solution to a technical problem.

In contrast, a more instructive case is *Freeny v. Fossil Grp., Inc.*, 2019 WL 1089145 (E.D. Tex. Feb. 12, 2019), *report and recommendation adopted*, 2019 WL 1083779 (E.D. Tex. Mar. 7, 2019).  In *Freeny*, the claims were directed to a portable device wirelessly communicating with a proximate external device by different signals (*e.g.*, first and second signals) for authorization.  *See Freeny*, 2019 WL 1089145, at *1-2.  The court found that the patent at issue is directed to a specific improvement over prior art and held that the defendant failed to prove by clear and convincing evidence that the claims were direct to an abstract concept under step one.  *Id.* at *5.  The court also noted that "[i]t is important to remember that the patent claims priority to 1999 and there are disputes between the parties as to what was conventional and well understood in the art at that time."  *See id.*  Thus, like the claims at issue in *Freeny* and *Core Wireless*, the claims of the '780 Patent, claiming priority to at least 15 years ago, require a "specific implementation" of a first signal, a second signal, Universal Serial Bus (USB) interface circuitry, wireless LAN interface circuitry, and predetermined time intervals, in order to improve upon prior art.

In sum, the claims of the '780 Patent do not represent abstract ideas and, thus, TCL has

failed to prove *Alice* step one by clear and convincing evidence. That ends the inquiry, and its motion can be denied as to the '780 Patent on that basis alone.

> **b.    The Claims of the '780 Patent Involve an Inventive Concept Using Unconventional Steps (*Alice* Step Two).**

Even if the claims of the '780 Patent are found to be directed to an abstract idea, the claims remain patentable because they involve the non-conventional arrangement of components and "an inventive concept can be found in the nonconventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

Prior to the priority date of the '780 Patent, it was entirely unconventional for image display apparatuses to conduct a slide show from images in a portable external image device connected to the display through circuitry containing different underlying operational requirements. *See* Compl., ¶¶ 77-81; *see also* '780 Patent at 1:30-54 (describing how image display apparatuses configured to use the IEEE 1394 standard were implemented differently than those that used HDMI systems). Specifically, including both USB interface circuitry and wireless LAN circuitry in one image display apparatus was not well-understood, routine, or conventional at the time the '780 Patent was invented. *See* Compl., ¶¶ 77-81.

TCL acknowledges that the "claims include the additional elements: Universal Serial Bus (USB) interface circuity, wireless LAN interface circuitry, a decoder, and a display screen," but it ignores these elements when concluding it has met *Alice* step two. *See* Mot. at 21-22. TCL is wrong, again. As explained earlier, the '780 Patent solves specific technical problems by the unconventional use of a first signal, a second signal, Universal Serial Bus (USB) interface circuitry, wireless LAN interface circuitry, and predetermined time intervals. And Maxell pled numerous facts supporting the unconventional use of these elements. *See* Compl., ¶¶ 77-81. This

12

is enough to defeat TCL's motion.

Indeed, this Court found the same in *Fall Line Patents v. Zoe's Kitchen*, Case No. 6:18-cv-407-RWS, 2021 U.S. Dist. LEXIS 251484 (E.D. Tex. May 25, 2021). In *Fall Line*, this Court held that the claims were drawn to an abstract idea yet denied defendant's motion to dismiss on 101 grounds for failing to prove *Alice* step two. *See id.* at *11-14. Although the parties disagreed as to the conventionality of the component arrangement, "at the 12(b)(6) stage, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to Plaintiff," this Court stated that "there are 'concrete allegations' in the complaint that 'individual elements and the claimed combination are not well-understood, routine, or conventional activity.'" *See id.* at *12 (citing *Aatrix*, 882 F.3d at 1128). This Court went on to hold that, "by pleading specific improvements in the prior art resolved by the claimed invention and specific uses of the conventional components . . . Plaintiff has pleaded an unconventional use that is not contradicted by the face of the [asserted patent]." *See id.* at *13-14. Just as this Court did not "resolve factual disputes" in denying defendant's motion in *Fall Line*, the Court should do the same here and find TCL has failed to prove *Alice* step two as to the '780 Patent. *See Cellspin*, 927 F.3d at 1317 ("plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to defeat a motion to dismiss).

In sum, TCL's motion to dismiss the '780 Patent on 101 grounds should be denied as TCL failed to prove both prongs of the *Alice* inquiry by clear and convincing evidence.

**3.    The '341 Patent is Patent Eligible.**

**a.    TCL's Motion Is Premature Prior To Claim Construction.**

As the claim construction process will be relevant to determining the scope of the '341 Patent claims, it would be premature to resolve questions of patent eligibility upon TCL's motion to dismiss, when the Court will not have the benefit of having established the appropriate claim

constructions.  *See MyMail*, 934 F.3d at 1381.

At least one term in the '341 Patent may benefit from claim construction for purposes of patent eligibility:

- "*communication unit*" (Claims 1, 2, 3, and 4):  a communication unit is not simply a generic element, as TCL seems to imply, but rather, in the context of the invention of the '341 Patent, a specific tool for transmitting a command related to setting of the video display apparatus and receiving status information. *See* Mot. at 18. Moreover, courts often construe claim limitations using the word "unit" as means-plus-function limitations because "unit" is a nonce term.  *See, e.g., Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291, 1296-97 (Fed. Cir. 2018).  Resolving this dispute through claim construction will be relevant to patent eligibility.

The relevance of this term to patent eligibility is explained in greater detail below.

The claim construction process has not yet begun, and accordingly Maxell reserves the right to modify or withdraw any of the above claim construction contention, but at a minimum, the above analysis shows that any determination of the patent eligibility of the '341 Patent will benefit from a thorough analysis of claim scope.

     **b.**       **The Claims of the '341 Patent Are Not Directed To An Abstract Idea (*Alice* Step One).**

The '341 Patent explains, and Maxell pled, the existence of a technical problem rooted in computer technology prior to its priority date over a decade ago—namely, it was not possible to seamlessly switch between and view content from different wireless devices utilizing different technologies like a router, Wi-Fi Direct, or Bluetooth. *See, e.g.*, '341 Patent at 6:40-51; *see also* Compl., ¶¶ 98-99 (describing modern day applications of Maxell's solution, such as casting to a television).  To meet this need, the '341 Patent is directed to a concrete solution for controlling a display unit through a specific means of operation and communication between a plurality of wireless devices.  *See, e.g.*, *id*. at 2:39-3:7; *see also* Compl., ¶¶ 98-99.  As such, the '341 Patent is not directed to an abstract idea under *Alice* step one but rather is directed to a specific solution to a technical problem that constitutes patentable subject matter.

Claims are patent eligible when they, like those of the '341 Patent, recite a "solution [that] is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *See, e.g.*, *DDR Holdings*, 773 F.3d at 1257. For example, in *Universal Elecs. Inc. v. Roku, Inc.*, the court held that a claim "directed to a specific method for connecting remote controls to appliances with multiple communications protocols" was not an abstract idea because it "'provid[ed] a specific solution to the then-existing technological problems' in remote control devices." 2019 WL 1877616, at *8 (C.D. Cal. Mar. 5, 2019) (quoting *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 (Fed. Cir. 2018)). The court elaborated that a patent that "recites a method wherein a single device is able to control multiple appliances, and to choose the best method for controlling each . . . represents a more efficient, and thus improved method of appliance control functionality." *Universal Elecs. Inc.*, 2019 WL 1877616, at *9. The court held that such a claim is "drawn to a particular technological improvement in the field of appliance control" and that it was improper to grant a motion to dismiss under Rule 12(b)(6). *Id*. Similarly, the '341 Patent recites a series of concrete steps and specific communications for controlling a display unit with multiple wireless control devices.

As it did for each of the challenged patents, TCL focuses on arguing Maxell cannot show an improvement to computer functioning as opposed to refuting the specific technological solution to a technical problem that Maxell pled and explained herein. *See* Mot. at 17-18. TCL gives the latter short shrift, claiming that "the '341 Patent is not directed to a specific solution to a technological problem" and points to the lack of relationship between the claimed solution and the functionality of the television, the mobile device, or the connection between them. *See id*. But the specification of the '341 Patent provides dozens of columns and 27 Figures explaining how, in fact, the claimed solution is tied to the claimed elements. *See Sta. Grp. LLC.*, 2023 U.S. Dist.

LEXIS 141366 *8-9. TCL questions where are the "specific means of operation and communications" (Mot. at 18), but these means are described in claims (*e.g.*, infrared), Figures, and in the specification, such as infrared rays, Wi-Fi Direct, and Bluetooth.

Nor does the '341 Patent attempt to preempt the field merely by claiming the result of an abstract idea as TCL asserts. *See* Mot. at 17. Rather, the '341 Patent recites a series of concrete steps and specific communications between wireless control devices and a display unit for controlling the display unit through (1) a computer network via a router, or (2) direct communication via, for example, infrared rays, Wi-Fi Direct, and Bluetooth. *See* '341 Patent, 6:47-51.

Finally, "courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO*, 837 F.3d at 1313. But that is exactly what TCL does in referring to "[t]he gist of Claim 1" and arguing that "[t]he '341 Patent's claims are directed to the abstract idea of *changing the video content playing on a display device*." *See* Mot. at 17 (emphasis in original). TCL's oversimplification of the claims ignores, for example, the following non-generic components:

- A communication unit that executes a first bi-directional wireless communication with a first wireless control device **without** going via a router.

- The communication unit that further executes a second bi-directional wireless communication with a second wireless control device **via** a router.

- An infrared receiver unit that receives infrared rays from a third wireless control device.

'341 Patent, claim 1 (emphases added). TCL further ignores, for example, the specific operations executed by the non-generic components in claim 1 in response to the first command transmitted via a router (*see id.* at 26:44-55) and a second command transmitted via infrared rays. *Id.* at 26:56-67. Thus, TCL's assertions that the '341 Patent is "[s]imilar to a switchboard operator connecting

16

and disconnecting calls and informing the caller of the same" and merely "a broad and familiar concept in the context of an internet-enabled telivision *(sic)*," are unsupported generalizations that ignore the specific requirements of the claims.

TCL's reliance on *Affinity Labs*, *TLI Comm'ns*, and *Free Stream Media* does not assist it in clearing the step one bar. *See* Mot. at 18; *see also id.* at 13-14 (discussing the cases with respect to the '020 Patent). In *Affinity Labs of Tex. v. DIRECTV, LLC*, the court found claims directed to "providing out-of-region access to regional broadcast content" were abstract ideas as the concept was a "broad and familiar concept concerning information distribution that is untethered to any specific or concrete way of implementing it." *See* 838 F.3d 1253, 1258 (Fed. Cir. 2016). In *TLI Comm'ns*, as discussed with respect to the '780 Patent, the claims merely implemented the method of classifying and storing images on conventional hardware without any discussion of providing a solution to a technical problem. *See* Section II(B)(2)(a)(2). Finally, in *Free Stream Media Corp. v. Alphonso Inc.*, the court held claims simply directed to targeted advertisement to mobile phones users based on data gathered from the user's television were directed to an abstract idea, noting that the claims did not explain the "how" behind the achieving the abstract idea other than using a computer. *See* 996 F.3d 1355, 1364-65 (Fed. Cir. 2021). In sum, none of the patents at issue in these three cases provided the details as set forth in the claims of the '341 Patent, which explain how the specific solution to the technical problem of viewing content between devices is achieved.

Accordingly, TCL has failed to prove *Alice* step one.

### c.     The Claims of the '341 Patent Involve an Inventive Concept Using Unconventional Steps (*Alice* Step Two).

The '341 Patent claims are not directed to an abstract idea, which ends the *Alice* inquiry. But even if they were, the claims are patent eligible under step two of the *Alice* test because they contain an "inventive concept." *Alice*, 573 U.S. at 217-18; *BASCOM*, 827 F.3d at 1350.

To begin, individual components of the '341 Patent are inventive, including the communication unit that executes a first bi-directional wireless communication with a first wireless control device **without** going via a router, the communication unit that further executes a second bi-directional wireless communication with a second wireless control device via a router, and an infrared receiver unit that receives infrared rays from a third wireless control device. *See generally* '341 Patent, claim 1.

Next, the communication unit and the infrared receiver unit, when considered as an ordered combination, further demonstrate the inventive concepts of the '341 Patent. For example, the communication unit and the infrared receiver unit are employed in response to the first command transmitted via a router and the second command transmitted via infrared rays. These components together "as an ordered combination" are a different, concrete improvement over TCL's alleged abstract idea of "changing the video content playing a display device." *See Alice*, 573 U.S. at 225.

Finally, TCL seeks to significantly downplay the '341 Patent's disclosure of an ordered combination of individual inventive components by arguing that "the entire specification is essentially no less than 14 embodiments, eaching *(sic)* describing a minor variation of the same abstract idea." *See* Mot. at 19. However, TCL provides no support for its apparent position that the number of embodiments disclosed in a patent may be dispositive for determining whether the claims recite an inventive concept. Indeed, if anything, the breadth of the specification (including 27 Figures) illustrates that the '341 Patent teaches a new and unconventional use of elements, some conventional, to solve the specific problem as explained in step one.

And, at the 12(b)(6) stage, the Court must accept all well-pled facts as true and view them in a light most favorable to Maxell. Maxell pled the specific improvement over the prior art by the claimed invention and the unconventional arrangement of the elements. *See* Compl., ¶¶ 98-

99.   As such, there is an open question of fact as to whether the inventive concepts of the communication unit and the infrared receiver unit, for example, were indeed well-understood, routine, or conventional at the time the '341 Patent was invented.  *See Berkheimer*, 881 F.3d at 1368; *see also Aatrix*, 882 F.3d at 1126-27 ("patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)"); *Fall Line*, 2021 U.S. Dist. LEXIS 251484 at *13-14.  Accordingly, TCL failed to prove *Alice* step two.

In sum, TCL's motion to dismiss the '341 Patent on 101 grounds should be denied as TCL failed to prove both prongs of the *Alice* inquiry by clear and convincing evidence.

### 4.    The '020 Patent is Patent Eligible.

#### a.    The Claims of the '020 Patent Are Not Directed To An Abstract Idea (*Alice* Step One).

Like the claims of the '341 Patent, the claims of the '020 Patent are directed to a specific solution to a technical problem related to computers.

As explained by the '020 Patent, prior to its priority date (at least 16 years ago), internet video relay systems could not be seamlessly operated by a single mobile terminal, and instead needed additional operation of the display either directly by an operation input or by the use of additional remote controls.  Furthermore, operators of these prior art systems would need to first terminate viewing in the mobile terminal in order to then view it on a separate screen. This caused interruption in viewing.  Further, "change-over operations" of internet content from the mobile terminal to another display device caused numerous problems.  For example, one problem was that the internet video content would restart from the beginning rather than resuming from the position of a scroll bar where it was being viewed in the mobile terminal.  *See* '020 Patent, 1:38-50, 2:23-3:7 (citing the deficiencies of multiple prior art references); *see also* Compl., ¶¶ 141, 143.

The claims of the '020 Patent—of which TCL ignores in its step one analysis apart from

independent claim 1—provide specific solutions to these technical problems by using instructions from the mobile terminal to control the display unit to perform change-over and operation of internet video content between the devices in an uninterrupted fashion—*e.g.*, using a separate device, such as a phone, not only to stream content to a television but to control the content (*e.g.*, stop, start, fast forward, etc.) as well.  While "casting" and "screen mirroring," technologies that allow people to stream video content from smartphones to televisions, for example, is commonplace today, such technology was not so in the 2007-2008 time frame.

For example, the claimed identifier and instructions sent by the mobile terminal is specific state information that triggers operation of the display in a specific manner, (e.g., by passing a URL of target video content, login authentication information, Cookie information, or the position of a scroll bar or pointer indicating a relative position of the video).  *See generally* '020 Patent, claims 1, 4, 5, 14, 23; *see also* '020 Patent, 17:38-57.  The claim elements provide an advancement over the prior art systems by enabling the continuous reproduction of internet video content as the video information is passed from one device to a separate video playback display device.  *See* Compl., ¶ 142.  Such a specific solution is not an abstract idea.  *See EcoServices*, 830 Fed. Appx. at 642 (claims are not abstract if, "when considered as a whole, and in light of the written description [they] . . . do not recite the mere desired result [but instead] recite a specific solution for accomplishing that goal").

Again, TCL ignores the specific technical solution and forwards a grossly oversimple abstract idea—"*changing video content on a display by retrieving a new video using an identifier and playing it*."  *See* Mot. at 12 (emphasis in original).  In support, TCL focuses only on the "action-triggering information acquired and received from a mobile terminal" statement in paragraph 142 of the Complaint, notably ignoring the rest as described above.  *See* Mot. at 13.

20

TCL likens the '020 Patent to nothing more than pushing a few buttons on a remote control to control a picture. But such cherry-picking of Maxell's Complaint and the claimed subject matter is wrong and ignores Maxell's foresight in developing these innovations over 16 years ago.

TCL then provides its "analogy"—Maxell's specific solution to technical problems set forth by numerous prior art references amounts to a person reading a book, asking a librarian for a second book, and, upon receiving that second book, putting down a first book to read the second book. *See* Mot. at 12-13. But like each of TCL's "analogies," TCL's attempt to shoehorn specific technical improvements into everyday scenarios falls flat and ignores the requirements and technical elements of the claim—this is wrong. *See, e.g.*, *TecSec*, 978 F.3d at 1292; *Enfish*, 822 F.3d at 1337; *McRO*, 837 F.3d at 1313.

The claims of the '020 Patent are not directed to a "broad and familiar concept," but instead to a specific manner of improving video relay systems, as described above, that improved technical problems with video playback and control. *See* Compl., ¶¶ 141-143; *see also* '020 Patent, 3:8-11.

Finally, for the same reasons set forth in Maxell's discussion of the '341 Patent, TCL's authority (*Free Stream Media*, *Affinity Labs*, and *TLI Comm'ns*) does not result in TCL meeting its burden to prove *Alice* step one by clear and convincing evidence. *See* Section II(B)(3)(b).

      **b.**    **The Claims of the '020 Patent Involve an Inventive Concept Using Unconventional Steps (*Alice* Step Two).**

Even if the '020 Patent recites an abstract idea, the claims are patentable because the claimed combination of elements recite an inventive concept—an improved way to relay and control internet video content between a mobile terminal and a display apparatus without viewing interruption. *See Cellspin*, 927 F.3d at 1317 (reversing a district court's patent ineligibility finding on step two grounds, holding that the claimed combination of steps, such as in the manner which it sends a data signal to a mobile device, was plausibly inventive and unconventional and at least

presented a question of fact not amendable for determination at the pleading stage).

Prior to the '020 Patent's priority date, it was unconventional for video relay systems that display content acquired via the internet to be controlled solely by a mobile terminal by action-triggering information, particularly from a smartphone (*e.g.*, claim 8). *See* Compl., ¶¶ 140-143. Indeed, for further context of the innovation of the claims, the first iPhone came out in 2007. Similarly, the claimed display apparatus is able to display video contents acquired from a television broadcast and acquired via the internet. Nowadays, televisions exist—often referred to as "smart TVs"—that are able to display both types of contents. However, such smart TVs were not around in the industry as of the priority date of the '020 Patent, let alone comprising the inventive concepts as claimed in the '020 Patent and pled by Maxell in the Complaint. *See* Compl., ¶¶ 140-143. As further explained in the step one analysis, the '020 Patent was directed to specific problems for a display apparatus (*e.g.*, smart TVs nowadays) and solved those problems in the prior art in unconventional ways and/or combination of components—*e.g.*, use of an identifier and operations instructions sent by the mobile terminal to control the display apparatus to perform change-over and operation of internet video content between the device. *See* '020 Patent at 1:64-67, 2:52-61, 3:8-16. Like the claims in *Cellspin*, the claimed combination of steps here that perform these device-controlling operations similarly do so in a specific and unconventional way.

TCL's Motion only addresses the conventionality of claim limitations in isolation and TCL fails to meet its burden by not showing that the specific combination of elements in the claims are conventional. *See* Mot. at 14-16 (characterizing claim 1 of the '020 Patent as "a laundry list of generic components performing their conventional operations"). Even in doing so, TCL brazenly ***omitted*** numerous elements from its claim 1 "list," including the "identifier" and "operation instructions" elements, from its *Alice* step two analysis. Regardless, TCL's approach is woefully

22

insufficient to prove step two by clear and convincing evidence as the Federal Circuit has held that the "inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art ... an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *See BASCOM*, 827 F.3d at 1350.

Furthermore, TCL's authority is inapposite. The claims in *Virginia Innovation* were directed to an abstract concept "of converting a mobile video signal to an HDTV." *See Virginia Innovation Sci. Inc. v. Amazon.com, Inc.*, 227 F. Supp. 3d 582, 605 (E.D. Va. 2017). In contrast to *Virginia Innovation* where the plaintiff did not contend the relevant "data compression or conversion was unknown in the prior art," Maxell has pled the unconventional arrangement of components, leading to the inventive concept, was not known in (and is distinguishable from) the prior art. Nor is Maxell's inventive concept merely "the abstract idea of communicating information and commands." *See* Mot. at 16 (citing *Trading Techs. Int'l, Inc. v. IBG, LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019)). The claims in *Trading Techs.*—directed to methods for displaying financial information on a screen—attempted to solve a ***business*** problem, not a ***technical*** problem as the claims of the '020 Patent do. *See id.* at 1382-83, 1385.

It is important to once again remember that the '020 Patent's priority dates back to over 15 years ago and smart TVs, and their functionalities, were not conventional and well-understood in the art then as they are now. The claim elements, as a whole, are used to perform a specific improvement over existing prior art and the claimed combination was not well-understood, routine, and conventional. At a minimum, TCL has failed to show that there are no genuine disputes of material facts. *See Aatrix*, 882 F.3d at 1128 ("Whether the claim elements or the claimed combination are well-understood, routine, [and] conventional is a question of fact.").

And, at the 12(b)(6) stage, the Court must accept all well-pled facts as true and view them

in a light most favorable to Maxell.  Maxell pled the specific improvement over the prior art by the claimed invention and the unconventional arrangement of the elements.  *See* Compl., ¶¶ 140-143.  As such, there is an open question of fact of whether the inventive concepts of the identifier and instructions in combination with the "laundry list" of other components, for example, were indeed well-understood, routine, or conventional at the time the '020 Patent was invented.  *See Berkheimer*, 881 F.3d at 1368; *see also Aatrix*, 882 F.3d at 1126-27; *Fall Line*, 2021 U.S. Dist. LEXIS 251484 at \*13-14.  Accordingly, TCL failed to prove *Alice* step two.

In sum, TCL's motion to dismiss the '020 Patent on 101 grounds should be denied as TCL failed to prove both prongs of the *Alice* inquiry by clear and convincing evidence.

### 5.    The '558 Patent is Patent Eligible.

#### a.    The Claim of the '558 Patent Are Not Directed To An Abstract Idea (*Alice* Step One).

The '558 Patent is not directed to an abstract idea, let alone the idea of "*adjusting the display durations of television notifications according to a user's level of interest*" as TCL contends.  *See* Mot. at 8 (emphasis added).  The '558 Patent provides a distinct solution for televisions that receive multiple notification types to dynamically tailor the timing for displaying such notifications for individual users.  *See* '558 Patent at 1:22-46; *see also* Compl., ¶ 118.

The patented technology overcame limitations in prior art smart televisions amid rising prevalence and popularity.  *See* '558 Patent at 1:22-47.  Conventional smart televisions at the time of the '558 Patent's priority date (at least 7 years ago) relied on a preset or fixed display time for displaying a notification before it would automatically be removed from the screen.  This "one-size-fits-all" approach to notifications was a problem for a user interested in a displayed notification that disappeared too quickly, as well as a problem for a user not interested in a displayed notification that remained on the screen for too long. Further, any subsequent

24

notifications of the same type were similarly displayed for a period of time that was too short or too long for a particular user.  *See id.*; *see also* Compl., ¶ 119.

The '558 Patent provides a particular technical solution for adjusting television notification display durations (the technological problem).  *See* '558 Patent at 1:16-18, 2:62-3:5; *see also* Compl., ¶ 120.  Upon receiving and displaying first notification information sent by a server with a first duration, the television receives an operation instruction by a user.  In response to the user operation, the television interprets the user's interest and automatically adjusts the display duration for subsequent notification information sent by the server of the same type.  *See id.*

TCL does not analyze the actual claim language, instead proving its own oversimplified version of the claimed steps.  *See* Mot. at 9.  The Federal Circuit has repeatedly warned against the practice TCL has employed for the '558 Patent (and the other patents).  *See McRO*, 837 F3d. at 1313.  TCL then analogizes the claims of the '558 Patent to "how advertisements have always sought to strike a balance between eye-catching and appropriate."  Mot. at 9.  But the '558 Patent makes no claim encapsulating the "idea of maintaining a user's focus in the context of an internet-enable tel[e]vision."  *Id*.  TCL's strawman argument should be discarded.

As explained above, the claims of the '558 Patent detail a method for adjusting the display duration of different types of notifications on a smart television.  Moreover, the claims of the '558 Patent are distinguishable over those claims in TCL's authority that lack a meaningfully limited invention.  For example, in *Intellectual Ventures I LLC v. Capital One Bank (USA)*, the claims at issue there were found to be directed to providing web pages tailored to an individual user.  792 F.3d 1363, 1369 (Fed. Cir. 2015).  In contrast, the claims of the '558 Patent describe an improvement to the graphical user interface (GUI) used to present notifications.

In *TLI Comm'ns*, the claims broadly covered the abstract idea of "classifying and storing

digital images in an organized manner." 823 F.3d at 613. The claims directed to viewing, on a device of a video surveillance system, displayed and stored video images in *Hawk Technology* were similarly unbounded. 60 F.4th at 1353. In contrast, the claims of the '558 Patent provide a specific technological solution to a technical problem by detailing a way that display durations of notifications are adjusted in response to operation instructions received from a user. Maxell's solution is more than "targeted advertising" used to "improv[e] a user's experience," as suggested by TCL. *See* Mot. at 9 (citing *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020)).

Rather, the claims of the '558 Patent more closely resemble the claims at issue in *Rockstar Consortium US LP, Inc. v. Samsung Elecs. Co.*, which covered a "method of notifying a user of an incoming communication event." *See* 2014 WL 1998053, at *1 (E.D. Tex. May 15, 2014). There, the court found that "even a casual reading of the claims reveals that its claims a process more limited that simply 'notifying a user.'" *Id.* at *4. For example, the claim clearly "articulates a bounded universe of applications for the claimed process" and "the claim itself is clearly narrower than the Defendants suggest." *Id.* Such is the case here. Additionally, both the claims in *Rockstar Consortium* and Claim 1 of the '558 Patent "clearly articulate a process that is meaningfully limited relative to the abstract idea of notification … require[ing] particular input from a user." *Id.*

Accordingly, the '558 Patent provides a specific graphical user interface solution to a problem with proving notifications on a smart television, and therefore are "a specific improvement over prior systems, resulting in an improved user interface for electronic devices" that are not directed to an abstract idea at *Alice* step one. *See Data Engine*, 906 F.3d at 1009.

### b. The Claims of the '558 Patent Involve an Inventive Concept Using Unconventional Steps (*Alice* Step Two).

As the '558 Patent is eligible at *Alice* step one, there is no need to examine *Alice* step two.

*See Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).  However, TCL's arguments fail at step two as well.

It would be a mistake to conclude that GUI improvements, such as notification display durations provided for by the '558 Patent, cannot provide an inventive concept at *Alice* step two. Indeed, software may provide the basis for an inventive concept at step two.  *See, e.g.*, *Cellspin*, 927 F.3d at 1316-17 (crediting the allegation that "that it was unconventional to separate the steps of capturing and publishing data so that each step would be performed by a different device linked via a wireless, paired connection" and remanding the district court's grant of a motion to dismiss).

Indeed, when looking at elements of claim 1 as an ordered combination as *Alice* demands (*see* 573 U.S. at 217; *see also BASCOM*, 827 F.3d at 1350), claim 1 recites a technological solution grounded in a television environment as part of an ordered combination, including at least "determining a first display duration corresponding to a notification type of the first notification information," "receiving, by the television, an operation instruction given by a user regarding the first notification information," and "adjusting, by the television, the first display duration corresponding to the notification type to a second display duration for a second notification information independently received from the server subsequent to and having the same type with the first notification information according a type of the operation instruction."  Furthermore, this is functionality that was not well-understood, routine, or conventional, and indeed was contrary to the conventional method of maintaining the display time of notifications.  *See* Compl., ¶ 119.

The Court does not need to credit Maxell's allegations to deny TCL's motion to dismiss—it is enough that there is an open question of fact of whether such functionality was indeed well-understood, routine, or conventional at the time the '558 Patent was invented.  *See Berkheimer*, 881 F.3d at 1368; *see also Aatrix*, 882 F.3d at 1126-27 ("patentees who adequately allege their

claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)"); *Fall Line*, 2021 U.S. Dist. LEXIS 251484 at *13-14. Accordingly, TCL failed to prove *Alice* step two.

In sum, TCL's motion to dismiss the '558 Patent on 101 grounds should be denied as TCL failed to prove both prongs of the *Alice* inquiry by clear and convincing evidence.

### C.    The Court Should Reject TCL's Prosecution History Estoppel Arguments Relating to the '558 Patent as Procedurally Improper And Wrong.

On top of TCL's incorrect argument that '558 Patent (and others) is invalid under § 101, TCL also claims that the '558 Patent cannot be infringed based on supposed disavowal (statements made by the applicant during patent prosecution). *See* Mot. at 5-7. Not only are these arguments premature at best, the prosecution history does not support TCL's claim.

First, TCL's demand for a finding of non-infringement, whether literally or under the doctrine of equivalents, is premature. The question to be resolved on a Rule 12(b)(6) motion to dismiss is not whether the plaintiff will ultimately prevail, 'but whether [the] complaint was sufficient to cross the federal court's threshold.'" *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 2016 WL 1643315 at *1 (E.D. Tex. April 26, 2016) (citation omitted) (denying a motion to dismiss that argued no infringement and noting questions related to direct infringement *"are properly left for claim construction, summary judgment, or trial"*) *Id.* at *4 (emphasis added). Detailed theories are not required, but the facts set forth in the complaint must state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Maxell's complaint sets forth such theories, including numerous examples and exemplary images. *See* Compl., ¶¶ 121-128. Furthermore, Plaintiff's *Infringement Contentions* are not due until April 10, 2024. *See* Local Rule 3-1. It is telling that TCL provides no authority—nor can they—that dismissed an infringement complaint at the 12(b)(6) stage with the tremendous amount of detail that Maxell set

forth in its Complaint.

Second, the prosecution history of the '558 Patent does not support a finding of disavowal. Disavowal by prosecution history disclaimer is an "exacting" standard requiring a "clear and unmistakable disclaimer." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1366-1367 (Fed. Cir. 2012); *Maxell Ltd. v. Huawei Device USA Inc.*, 297 F. Supp. 3d 668, 679 (E.D. Tex. 2018) ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender.") (citation omitted). TCL does not and cannot meet this standard.

During prosecution, the applicant distinguished the claimed invention from the cited art (*Etheredge*)—nothing more. In response to the Examiner's argument that "the second display duration taught by *Etheredge* is the sum of said predetermined times dependent upon how many levels of pop up information the user clicks through," Applicant explained that even if a time period for displaying a first notification is adjusted, the adjustment as disclosed in *Etheredge* applies to the same first notification (not the second notification, as claimed). *See* Dkt. 37-2 at 20-22. Further, applicant clarified that *Etheredge's* pop up (*i.e.*, first notification) disappears and that *Etheredge* does not disclose a second pop up overlay. *See id.* Therefore, because *Etheredge* did not disclose a second notification, it cannot disclose adjusting corresponding second display duration as set forth in the claims. *Id.*

As the applicant made no such clear remarks, TCL relies on a statement ***from the Examiner*** to support its disavowal theory. In the Notice of Allowance, the Examiner noted that "the display duration must be greater than zero and applied to a separate second notification." Dkt. 37-2 at 12. However, this statement merely demonstrates ***the Examiner's understanding*** of the pending claims in comparison with the cited reference. However, ***an Examiner's statement*** cannot satisfy

the clear and unmistakable standard.  *See Alfred E. Mann Found.*, 841 F.3d at 1341 ("an examiner's unilateral statement does not give rise to a clear disavowal of claim scope by the applicant"); *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324–25 (Fed. Cir. 2002) ("[P]rosecution history ... cannot be used to limit the scope of a claim unless the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter."). Thus, the prosecution history citations relied upon by TCL fall well short of the "exacting" standard.

In the Complaint, Maxell set forth sufficient factual allegations as the basis for infringement, including notifications such as personalize advertisements from the internet.  Compl, ¶ 128.  The television, such as the '558 Accused Products, will display these advertisements at different durations (*e.g.*, a second display duration) such as an infinite amount of time, a specific amount of time, or zero time.  *Id.*  Indeed, paragraph 128 of the Complaint identifies at least three possible durations that the television can assign as a second display duration.  *Id.*

TCL takes issues with the "zero time" duration example.  *See* Mot. at 6-7.  However, as established above, **the Examiner's** solitary remark in the prosecution history does not preclude a zero duration notification as a basis for infringement.  TCL manufactures a new claim limitation—namely that the second notification must be greater than zero, and therefore also displayed.  In other words, TCL not only argues that the Examiner's statement is disclaimer (it is not), but TCL is also simultaneously guilty of reading in a claim limitation that is simply not there.  At a minimum, the court should reject TCL's arguments related to claim construction and/or infringement which are hotly contested by the parties at the 12(b)(6) stage.

## III.    CONCLUSION

Maxell respectfully requests that this Court deny TCL's Partial Motion to Dismiss in its entirety.

Dated: March 26, 2024                    By:   */s/ Kfir B. Levy*
                                              Geoff Culbertson (Texas Bar No. 24045732)
                                              Kelly Tidwell (Texas Bar No. 20020580)
                                              Patton, Tidwell & Culbertson, LLP
                                              2800 Texas Boulevard (75503)
                                              Post Office Box 5398
                                              Texarkana, TX 75505-5398
                                              Telephone: (903) 792-7080
                                              Facsimile: (903) 792-8233
                                              gpc@texarkanalaw.com
                                              kbt@texarkanalaw.com

                                              Jamie B. Beaber
                                              Kfir B. Levy
                                              Alan M. Grimaldi
                                              James A. Fussell, III
                                              Tiffany A. Miller
                                              Michael L. Lindinger
                                              Alison T. Gelsleichter
                                              Tatsuya Koyama
                                              Young Kyoung (Claire) Kim
                                              MAYER BROWN LLP
                                              1999 K Street, NW
                                              Washington, DC 20006
                                              Telephone: (202) 263-3000
                                              Facsimile: (202) 263-3300
                                              jbeaber@mayerbrown.com
                                              klevy@mayerbrown.com
                                              agrimaldi@mayerbrown.com
                                              jfussell@mayerbrown.com
                                              tmiller@mayerbrown.com
                                              mlindinger@mayerbrown.com
                                              agelsleichter@mayerbrown.com
                                              tatsuya.koyama@mayerbrown.com
                                              clairekim@mayerbrown.com

                                              Amanda S. Bonner
                                              Luiz Miranda
                                              MAYER BROWN LLP
                                              71 S. Wacker Drive
                                              Chicago, IL 60606
                                              (312) 782-0600
                                              asbonner@mayerbrown.com
                                              lmiranda@mayerbrown.com

                                              *Counsel for Plaintiff Maxell, Ltd.*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 26th day of March, 2024 with a copy of this document via the Court's CM/ECF system per Local rule CV-5(a)(3).


Dated: March 26, 2024                          */s/ Kfir B. Levy*
                                               Kfir B. Levy